IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARIO WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. CIV-19-0820-HE |
| | ) | |
| FNU GRAY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# ORDER

Plaintiff Mario Williams, an inmate in the custody of the Oklahoma Department of Corrections ("DOC"), filed this case alleging violations of his constitutional rights and of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). The case was referred to U.S. Magistrate Judge Shon T. Erwin for initial proceedings. Judge Erwin submitted a Report and Recommendation which recommended the dismissal of several of plaintiff's claims but that others be allowed to proceed. The court adopted the Report and Recommendation, with the result that four individual capacity claims remained for resolution: a First Amendment retaliation claim against defendant Gray, an Eighth Amendment excessive force claim against defendant Fowler, a First Amendment free exercise claim against defendant Lindsey, and a First Amendment free exercise claim against defendant Allbaugh based on a theory of supervisory liability.

Defendants then filed a motion for summary judgment as to the remaining claims.[1] Judge Erwin issued a second Report and Recommendation (the "Report") recommending

---

[1] *Defendants' motion sought dismissal of plaintiff's claims or, in the alternative, summary*

that the motion be denied as to the claims against defendants Gray and Fowler and granted as to the First Amendment free exercise claims against Lindsey and Allbaugh. Defendants Gray and Fowler have not objected to the Report and have thereby waived their right to appellate review of the issues addressed by the Report as to them. Casanova v. Ulibarri, 595 F.3d 1120, 1123 (10th Cir. 2010). Plaintiff, however, has objected to the recommendation as to the free exercise claims, which triggers *de novo* review by the court of the defendant's motion as to those claims.

To demonstrate a violation of the First Amendment's Free Exercise Clause, a prisoner must show that "the prison regulation or action at issue 'substantially burdened sincerely-held religious beliefs.'" Blair v. Raemisch, 804 Fed. Appx. 909, 916 (10th Cir. 2020) (quoting Kay v. Bemis, 500 F.3d 1214, 1218 (10th Cir. 2007)). Here, defendants do not dispute that plaintiff has sincerely held religious beliefs as a practicing Muslim. However, that does not end the issue, because "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). If prison officials identify legitimate penological interests which they contend justify the impinging regulation, the court must "balance the factors set forth in Turner . . . to determine the reasonableness of the regulation." Kay 500 F.3d at 1218-19.

---

*judgment as to them. Because the motion relied on evidentiary materials outside the pleadings, the Report appropriately addressed the motion as one for summary judgment.*

Plaintiff's free exercise claim relates to his refusal to sign the diet request form — ODOC OP-030112, Attachment C ("Form C") — required by DOC to receive a kosher diet. The undisputed facts establish that plaintiff had received a kosher diet in the past, that DOC adopted a new form and policy for seeking the diet in early 2019, and that plaintiff submitted the form requesting a kosher diet but refused to sign the form as required. As a result of his refusal to execute the form, he was removed from the kosher diet plan at the direction of defendant Lindsey, the prison chaplain. The supervisory liability claim against Allbaugh is based on his participation in promulgating the new policy and form.

Form C requires prisoners to agree to three rules as a precondition to their receiving a special diet: (1) that they will not eat food inconsistent with the diet, (2) that they will not barter prepackaged foods, and (3) they will not take foods out of designated eating areas. A violation of the rules will result in a Class A misconduct. Doc. 24-18. Plaintiff contends that complying with these rules would infringe on his right to practice his religion.

As noted above, a prison regulation which impinges on an inmate's constitutional rights may nonetheless be valid if the regulation is reasonably related to legitimate penological interests. That reasonableness determination is made by considering the four factors identified in <u>Turner v. Safley</u>. Those factors are: (1) whether there is a "valid, rational connection" between the prison regulation at issue and the legitimate governmental interest put forward to justify it, (2) whether alternative means of exercising the religious right in question remain open to inmates; (3) the impact of the accommodation of the right in question on guards and other inmates and on the allocation of prison resources; and (4) whether any ready, easy to implement alternatives exist that would accommodate the right

in question. Turner, 482 U.S. at 89-91.  Where, as here, the determination is made in the context of a summary judgment motion, the court draws all reasonable inferences as to factual disputes in favor of the non-movant, i.e. the plaintiff.  But, as to matters of professional judgment as to the operation of the prison, the court must accord deference to the views of prison authorities.  Beard v. Banks, 548 U. S. 521, 529-30 (2006).  As a result, the prisoner must come forward with sufficient evidence regarding those issues as would warrant judgment in his favor on the merits.  Id.  The court concludes plaintiff has not met that burden here.

The first Turner factor evaluates whether there is a valid, rational connection between the regulation and the identified penological interest.  Defendants indicate there are multiple interests served by requiring adherence to Form C, including providing a means of evaluating the sincerity of an inmates professed religious beliefs and providing a practical means of identifying those who are or are not eligible for a special diet.  The restriction as to bartering food is said to be related to security concerns and the potential for bartering for drugs and the like.  The restriction on moving special meals outside designated dining areas is said to be desirable for the orderly operation of the facility.

All of the objectives identified by defendants are legitimate penological goals and plaintiff has not challenged that those are in fact the objectives defendants seek to advance. Further, plaintiff has not identified evidence which would support a conclusion that a valid, rational connection between a requirement for execution of Form C and the goals is lacking.  He insists that his own religious beliefs are sincerely held and neither the defendants nor the court have any reason to doubt that. But that is not the question. Rather,

the question is whether DOC has a valid interest in procedures designed to help it identify those inmates who sincerely hold professed religious beliefs and those who do not. And plainly it has such an interest. The law requires prisons to take various steps to accommodate the special dietary and other needs of inmates based on their religious views. Accommodating those additional requirements necessarily impacts the staffing, costs, and other aspects of prison operations. So, a prison has a legitimate interest in limiting those additional efforts to inmates who sincerely believe the religious views they profess. Form C's "no other food" requirement is one way of attempting to identify inmates who may profess particular religious beliefs to get a better or different diet but who may not sincerely believe the views they profess. Similarly, the bartering and location restrictions are reasonably related to the security and operational concerns of the prison. The first Turner factor weighs in favor of defendants.

The second Turner factor considers whether there are alternative ways for an inmate to exercise their rights if the restriction at issue is enforced. Turner, 482 U. S., at 90. Plaintiff contends the prison may sometimes not have kosher food available and he wants to be able in that circumstance to get a halal meal or buy something in the commissary, which would presumably be contrary to the Form C requirement that the inmate eat only food from the special diet he elects. But the prison presumably recognizes its ongoing duty to feed the inmates and, if some circumstance results in the unavailability of a kosher meal on a particular occasion, there is every reason to assume the prison will itself provide an alternative meal that does not put plaintiff in the position of incurring a Class A or any

other misconduct. Plaintiff's speculation to the contrary is not persuasive. The second Turner factor does not indicate the form or policy are unreasonable.

The third Turner factor — the impact of the accommodating plaintiff on guards and other inmates — also weighs in favor of finding the regulation reasonable. Increasing the materials available for barter increases the situations staff is required to monitor or be concerned about. Keeping food in designated areas makes obvious sense in terms of maintaining cleanliness and order of the facility, and the consequent impact on staff supervision time. Plaintiff has not presented evidence which would warrant overriding the judgment of corrections officials in this regard.

Finally, the fourth Turner factor — whether any easy alternatives exist — also weighs in favor of holding the regulation reasonable. Plaintiff has not identified any alternative that would permit the prison to more readily accomplish the goals it has identified — assessing the good faith of professed religious beliefs, avoiding bartering, efficiently administering the special diet program, and the like. As a result, no basis has been shown for overriding the deference owed to prison officials in this context.

In sum, plaintiff has not identified evidence sufficient to create a material issue of fact in these circumstances, i.e. evidence which would warrant a judgment in his favor on a matter otherwise within the professional judgment of prison administrators. Beard, 548 U.S., at 530.

In light of the foregoing, the Report [Doc. #37] is **ADOPTED** as to plaintiff's claims against defendants Gray and Fowler, and defendants' motion for summary judgment [Doc. 25] is **DENIED** as to them. For the reasons stated here, and after *de novo* review, the

recommendation of the Report is **ADOPTED** as to plaintiff's claims against defendants Lindsey and Allbaugh and defendants' motion is **GRANTED** as to those defendants.

Plaintiff has also re-urged his request for appointment of counsel. As certain of plaintiff's claims have now survived summary judgment and remain for resolution, and in light of defendant's incarcerated status, the court concludes counsel should be appointed if possible. His motion to reconsider that issue [Doc. #38] is **GRANTED** to this extent: the court will seek to identify an attorney willing to take the case *pro bono*. The court is not authorized to compel counsel to appear on plaintiff's behalf but may "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1).

A status conference to establish a schedule for further proceedings in the case will be set after a reasonable period of time for efforts to secure counsel has elapsed.

**IT IS SO ORDERED**.

Dated this 20th day of October, 2020.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE