IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARIO WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-19-820-STE |
| ) | |
| FNU GRAY, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mario Williams, a state inmate appearing through counsel, brings this action under 42 U.S.C. § 1983, alleging various constitutional violations including an Eighth Amendment excessive force claim. (ECF No. 1). This Order is limited to consideration of the Motion for Summary Judgment filed by Defendant Don Fowler. **(ECF No. 69)**. Mr. Williams has responded (ECF No. 73), and Defendant Fowler has replied. (ECF No. 75). The Court **GRANTS** Defendant Fowler's Motion for Summary Judgment.

### I.   BACKGROUND

Plaintiff alleges that Defendant Fowler used excessive force in violation of the Eighth Amendment during a medical transport. (ECF No. 1:10-11, 15, 24). According to Mr. Williams, on February 3, 2018, while being transported to the Lindsey Municipal Hospital from the Lexington Correctional Facility (LCF), he "was secured using a black medical belt rather than the standard iron chain and black box." (ECF No. 1:10). Approximately one week later, Plaintiff was transported back to LCF. Mr. Williams alleges the hospital doctor told him he would be secured with a medical belt rather than the box

and chains. (ECF No. 1:10). When prison officials arrived to take Mr. Williams, back to LCF, however, they brought only the traditional box and chains. Mr. Williams states that when he reminded one of the transport officers of his need for the medical belt, the officer exclaimed that he had forgotten to bring one and left to consult Defendant Fowler. (ECF No. 1 at 10). When the officer returned with Defendant Fowler, Mr. Williams explained his reasons for needing the alternate type of restraint and even showed Defendant Fowler a medical order dated July 27, 2015, stating the that transfer officers "MAY USE BLACK BELT RATHER THAN BOX FOR TRANSPORT, TO PREVENT WRIST INJURY." Defendant Fowler, however, refused to return to the facility for a medical belt, and Plaintiff was restrained using the box and chains. (ECF No. 1:10).

Mr. Williams alleges the use of the box and chains caused him "tremendous pain [and] anguish." He claims he was sweating profusely during the ride and had a panic attack. He further claims that when he returned to LCF, his hands and wrists were painful and swollen. He states he did not regain full use of his hands for several hours. (ECF No. 1:10-11).

Plaintiff filed a grievance regarding the use of the box and chains, requesting that the matter be "investigat[ed] . . . to the highest authority to rectify this matter[.]" (ECF No. 1-4 at 2). The Facility Health Services Administrator responded by stating the July 27, 2015, order had been re-evaluated, and a new order, dated February 13, 2018, had been written. (ECF No. 69-6). Like the 2015 order, the updated order stated that a black belt "may" be use for transport.

In this, his second Motion for Summary Judgment, Defendant Fowler argues that he is entitled to judgment on the Eighth Amendment claim because he followed the policy of the Oklahoma Department of Corrections (ODOC) that mandates the use of traditional restraints for transportation of prisoners, because the July 27, 2015, order had expired and had no application to a transport effected three years later, and because Mr. Williams' alleged injuries were not severe enough to indicate purposeful harm. Failing these arguments, Defendant Fowler claims he is entitled to qualified immunity.

In addition to his own Affidavit, Defendant Fowler has included Affidavits from Ross Fisher, Chief Medical Officer of the ODOC, and Melissa Ritter, another of the transport officers, in support of his Motion for Summary Judgment.[1] Mr. Williams relies on his verified complaint to support his version of the events.

## II.   STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment shall be granted where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Parties may establish the existence or nonexistence of a material disputed fact through:

- submission of "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or"

---

[1] According to Plaintiff's Complaint the date of the transport in question was "about a week after" he was first sent to Lindsey Municipal Hospital on February 3, 2018. Defendant Fowler and Melissa Ritter both state Plaintiff was being returned to Lexington Correctional Facility from Lindsey Municipal Hospital on February 3, 2018. The difference in the dates of the transport in question does not create a genuine issue of material fact and does not preclude granting summary judgment to Defendant Fowler.

3

- demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B). The cited evidence should be viewed "in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (citation omitted).

To defeat a motion for summary judgment, evidence must be based on more than mere speculation, conjecture, or surmise. *Rice v. United States*, 166 F.3d 1088, 1091-1092 (10th Cir. 1999). Moreover, the existence of a factual issue does not preclude entry of summary judgment where there is no evidence to support a dispute on that issue or the evidence is so one-sided that no reasonable juror could find for the other side. *True v. United States*, 190 F.3d 1165, 1177 (10th Cir. 1999). Conclusory allegations will not create a genuine issue of material fact defeating a summary judgment motion. *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995). In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### III.  ANALYSIS

#### A.  Qualified Immunity Standard

Qualified immunity shields from liability law enforcement officials who cause harm by making reasonable mistakes when they must exercise their discretion. *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009). When a defendant asserts qualified immunity at the summary judgment stage, the burden shifts to the plaintiff to

show that: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time of defendant's conduct. *Callahan v. Unified Gov't of Wyandotte Cty.*, 806 F.3d 1022, 1027 (10th Cir. 2015). A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Courtney v. Okla. ex rel. Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013).

Under Supreme Court and Tenth Circuit decisions, a law is not clearly established unless existing precedent places the right in question "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Nonetheless, the qualified immunity analysis is not a "scavenger hunt for prior cases with precisely the same facts." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). "[T]o show that a right is clearly established, the plaintiff must point to 'a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Callahan*, 806 F.3d at 1027. To prevail against a defendant's assertion of qualified immunity, the plaintiff need not identify a case holding the exact conduct in question unlawful. *Pierce*, 359 F.3d at 1298. The focus is whether the law at the time of the defendant's conduct provided the defendant with "fair notice" regarding the legality of his conduct. *Id.*

"When the defense of qualified immunity is raised in a summary judgment motion, special rules apply." *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004) (internal quotation marks and citation omitted). *See also Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (the court's review of summary judgment "in the qualified

immunity context differs from that applicable to review of other summary judgment decisions."). "After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff," who must meet a two-part test before the defendant will bear the traditional burden of a movant for summary judgment under Fed. R. Civ. P. 56(c). *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001) (internal quotation marks and citation omitted).

"Specifically, [t]he plaintiff initially bears a heavy two-part burden [and] must show (1) that the defendant's actions violated a constitutional . . . right, and (2) that the right allegedly violated [was] clearly established at the time of the conduct at issue. Unless the plaintiff carries [his] twofold burden, the defendant prevails." *Reynolds*, 370 F.3d at 1030 (internal quotation marks and citations omitted). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (internal quotation marks omitted).

### B. Excessive Force Under the Eighth Amendment

Mr. Williams alleges Defendant Fowler is liable under a theory of excessive force under the Eighth Amendment for failing to secure his hands with a medical belt rather than with the traditional chains and black box.

Because Defendant has asserted the defense of qualified immunity on this claim, the burden shifts to Plaintiff to demonstrate: (1) Defendant Fowler violated a constitutional right, and (2) the constitutional right was clearly established at the time of

his conduct. *Courtney v. Okla. ex rel. Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013).

The United States Supreme Court has stated that the "core judicial inquiry" for an Eighth Amendment excessive force claim, is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Whitley v. Albers*, 475 U.S. 312 (1986). The standard for analyzing such claims is whether an "unnecessary and wanton infliction of pain" has occurred. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To determine whether a defendant could plausibly have thought that a particular use of force was necessary, the Court must consider the need for application of the force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *See id.*

The Court's analysis of Plaintiff's excessive force claim includes both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991). Objectively, Plaintiff must show the alleged wrongdoing was harmful enough to establish a constitutional violation. *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003). "The objective component is . . . contextual and responsive to contemporary standards of decency." *Norton v. City of Marietta, Okla.*, 432 F.3d 1145, 1154 (10th Cir. 2005). "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," only those physical punishments rising above *de minimis* uses of force "are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 9–10 (citations omitted). While the presence of an injury is not

7

required, the presence or absence of an injury is a factor in the determining whether a defendant's conduct constituted an objectively serious use of force. *See Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992) (holding that "significant physical injury" is not required, but "[t]he extent of injury may be relevant in determining whether corrections officers unnecessarily and wantonly inflicted pain").

Subjectively, Mr. Williams must show Defendant Fowler acted with a sufficiently culpable state of mind. "The subjective element . . . turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* (citation and quotation marks omitted). *Norton*, at 1154 (quoting *Whitley*, 475 U.S. at 320–21).

In this case, Mr. Williams has failed to establish a constitutional violation based on use of excessive force. Restraining inmates during transportation is obviously necessary for the security of the transporting officers and other inmates. Unquestionably, Mr. Williams would have been more comfortable if Defendant Fowler had restrained him with a medical belt rather than traditional handcuffs. But there is nothing to indicate Defendant Fowler used the traditional restraints maliciously and sadistically for the very purpose of causing harm. Mr. Williams' own recitation of events in his Complaint indicates that it was a different officer—not Defendant Fowler—who admitted he forgot to bring the medical belt to secure Mr. Williams, leaving Defendant Fowler with the ultimate choice of either using traditional restraints or making a four-hour round trip to secure and transport Mr. Williams with a medical belt. The second option presented further security risks in addition to requiring the use of more prison resources—considerations best left to prison officials

rather than the courts. *See e.g. Turner v. Safley*, 482 U.S. 78, 89 (1987) (prison administrators, not the courts, are to make the difficult judgments concerning institutional operations). Even the 2015 transportation note cannot be construed as a mandate that Plaintiff's medical condition required him to be restrained solely with a medical belt. Had the medical belt been a medical necessity, the medical professional who penned the transport note would undoubtedly have directed that a medical belt *"must"* be used rather than stating such a restraint *"may"* be used. What is more, the minimal injury inflicted—swollen wrists and less than optimal use of his hands for several hours—is a relevant consideration in this case. *See Stanton v. Furlong*, 73 F. App'x 332, 334 (10th Cir. 2003) (the extent of the injury inflicted on an inmate can be a relevant factual consideration "in determining whether corrections officers unnecessarily and wantonly inflicted pain") (quoting *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992)). Plaintiff has failed to meet his burden of demonstrating Defendant Fowler's use of traditional restraints constituted excessive force.

## ORDER

The Court **GRANTS** summary judgment to Defendant Fowler on the Eighth Amendment excessive force claim.

ENTERED on October 18, 2022.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE